UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIANE TLUCEK FONT, | CASE NO. 1:14CV2805 |
| Plaintiff, | JUDGE DAN AARON POLSTER |
| v. | Magistrate Judge George J. Limbert |
| CAROLYN W. COLVIN,[1] ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | |

Plaintiff Diane Tlucek Font ("Plaintiff") requests judicial review of the decision of the Commissioner of Social Security Administration ("Defendant") denying her application for disability insurance benefits ("DIB"). ECF Dkt. #1. In her brief on the merits, filed on June 23, 2015, Plaintiff asserts that the administrative law judge ("ALJ") erred in his decision for the following reasons: the ALJ wrongfully determined that Plaintiff's atrial fibrillation, a medically-determinable impairment, did not persist for twelve months; the ALJ violated the treating physician rule; and the ALJ engaged in an improper analysis of Plaintiff's credibility. ECF Dkt. #13 at 2. Defendant filed a response brief on September 18, 2015. ECF Dkt. #17. Plaintiff filed a reply on September 23, 2015. ECF Dkt. #20.

For the following reasons, the undersigned RECOMMENDS that the Court REVERSE the ALJ's decision and REMAND Plaintiff's case to the ALJ for analysis of Plaintiff's atrial fibrillation and to proceed through the sequential evaluation based on that analysis.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security, replacing Michael J. Astrue.

**I.     FACTUAL AND PROCEDURAL HISTORY**

Plaintiff applied for DIB on June 27, 2012. ECF Dkt. #10 ("Tr.") at 128.[2] The Social Security Administration denied Plaintiff's application on October 9, 2012. *Id*. at 83. Plaintiff then requested a hearing before an ALJ, and her hearing was held on August 8, 2013. *Id*. at 38.

The ALJ issued a decision on September 17, 2013 denying Plaintiff's request for DIB. Tr. at 24. The ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from the alleged onset date, September 19, 2011, through Plaintiff's date last insured, March 31, 2012. *Id.* at 29. Continuing, the ALJ determined that Plaintiff suffered from the following medically determinable impairments: congestive heart failure; history of prosthetic aortic valve in 1997; asthma; restrictive ventilatory dysfunction; obesity; obstructive sleep apnea; and a calcaneal spur in the right foot. *Id.* The ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 30. After stating that he had considered the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). Next, the ALJ found that Plaintiff was capable of performing past relevant work as an accounts payable representative and an apartment manager. *Id*. at 33. When making this finding, the ALJ stated that work as an account receivable representative or an apartment manager did not require the performance of work-related activities that were precluded by Plaintiff's RFC. *Id.* Based on these findings, the ALJ determined that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from September 19, 2011, the alleged onset date, through March 31, 2012, the date Plaintiff was last insured. *Id.* at 34.

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

A request for review of the ALJ's decision was filed with the Appeals Council on September 24, 2013. Tr. at 23. The request for review was denied. *Id.* at 4. At issue is the decision of the ALJ dated September 17, 2013, which stands as the final decision. *Id.* at 24.

On December 22, 2014, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on June 23, 2015, asserting the following assignments of error:

1. ALJ failed to find that [Plaintiff's] underlying impairment of atrial fibrillation was a medically-determinable impairment because the ALJ alleged that it did not persist for 12 consecutive months, despite medical evidence documenting otherwise.

2. The ALJ violated the treating physician rule by failing to apply the controlling weight test to Dr. Csepanyi's opinions or providing good reasons for rejecting the treating source opinion.

3. The ALJ engaged in an improper analysis of [Plaintiff's] credibility, by providing inadequate reasons for rejecting her allegations regarding her own syndrome.

ECF Dkt. #13 at 2. Defendant filed a response brief on September 18, 2015. ECF Dkt. #17. Plaintiff filed a reply brief on September 23, 2015. ECF Dkt. #20.

## II. SUMMARY OF THE MEDICAL EVIDENCE

In September 2011, Randall Harada, M.D., treated Plaintiff. Treatment notes from that session indicate that Plaintiff underwent a cardioversion in March 2011, with a reoccurrence in July 2011 and a repeat cardioversion in August 2011. *Id.* at 256. Dr. Harada's report also indicates that Plaintiff underwent aortic valve replacement in 1997. *Id.* Dr. Harada states that Plaintiff was alert, appeared well, was well nourished, and had no acute distress, but that Plaintiff's heart rhythm was irregular. *Id.* at 257. After examining Plaintiff, Dr. Harada recommended that an atrial fibrillation ablation be considered. *Id.*

Records from Anantjit Singh, M.D., indicate that Plaintiff experienced atrial fibrillation from September 2011 through January 2012. Tr. at 183-92. On September 30, 2011, Dr. Singh opined the Plaintiff required an atrial fibrillation ablation. *Id.* at 191-92. The ablation was performed by Dr. Singh on October 29, 2011. *Id.* at 212. Dr. Singh's procedure notes state that there was

successful pulmonary vein isolation during the ablation, and that Plaintiff went into atrial fibrillation during the procedure, but converted back into normal sinus rhythm. *Id.*

In addition to seeking medical care from Dr. Singh, Plaintiff saw Emerico Csepanyi, M.D., in November 2011. Tr. at 264. Dr. Csepanyi's report indicated that Plaintiff was not suffering from respiratory distress, had normal respiratory rhythm and effort, and that Plaintiff's bilateral breath sounds were clear. *Id.* Additionally, Dr. Csepanyi noted that Plaintiff's heart rate and rhythm were normal, with no gallops, no pericardial rub, and no murmurs. *Id.* Dr. Csepanyi diagnosed Plaintiff with congestive heart failure and asthma with acute exacerbation. *Id.* Plaintiff was prescribed an inhalation aerosol solution, and Dr. Csepanyi indicated that Plaintiff should improve her diet and exercise. *Id* at 264-65.

Plaintiff's atrial fibrillation that had been treated by Dr. Singh in October 2011 reoccurred in December 2011, and she returned to Dr. Singh's office on December 2, 2011 and December 9, 2011. Tr. at 186-89. During the December 2, 2011 visit, Dr. Singh again diagnosed Plaintiff with atrial fibrillation, and did not indicate that any irregularities presented themselves during the examination of Plaintiff's heart. *Id.* at 187. Dr. Singh prescribed a diuretic to treat the fluid retention in Plaintiff's heart. *Id.* at 189. During the December 9, 2011 visit, Dr. Singh indicated that Plaintiff was well nourished, well developed, did not suffer from acute distress, and possessed good hygiene and normal grooming. *Id.* at 187. Dr. Singh reiterated his diagnosis of atrial fibrillation, noting that Plaintiff had a regular heart rate, normal heart sound with no murmurs, a regular heart rhythm, and that the exam was otherwise normal other than the presence of an apical-carotid pulse delay. *Id.* Plaintiff was prescribed a beta-blocker to improve her symptoms. *Id.*

On December 15, 2011, Plaintiff underwent an all-night polysomnogram, which revealed that Plaintiff suffered from sleep apnea. Tr. at 294-95. Dr. Singh examined Plaintiff's heart the following month and again diagnosed Plaintiff with atrial fibrillation and also noted her sleep apnea. *Id.* at 185-86. On January 3, 2012, Dr. Singh noted that an EKG showed an atrial flutter in Plaintiff's heart. *Id.* at 185. A pulmonary function test performed on January 10, 2012 suggested that restrictive ventilatory dysfunction was present. *Id*. at 315.

In April 2012, Plaintiff visited Alicia Montañez, M.D., and Dr. Montañez performed another ablation procedure. Tr. at 287-91. On May 8, 2012, Plaintiff saw Dr. Harada and was diagnosed with unspecified hypertensive heart disease with congestive heart failure. *Id.* at 271. Dr. Harada indicated that Plaintiff suffered from a recurrent, self-limited episode of atrial fibrillation in the form of palpitations the day before the appointment. *Id.* Dr. Montañez sent a letter to Dr. Harada on May 18, 2012, stating that Plaintiff was feeling "much better" and that the April 2012 atrial fibrillation and ablation procedure was successful. *Id.* at 405.

On October 4, 2012, state agency physician N.J. Rubaum, M.D., reviewed Plaintiff's medical records and determined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, and stand and/or sit for about six hours in an eight-hour workday. Tr. at 78-79. Dr. Rubaum's report indicated that Plaintiff underwent successful valve replacement surgery, Plaintiff had two ablation procedures, and that Plaintiff was doing "very well" from a cardio-respiratory standpoint. *Id.* at 79. Additionally, Dr. Rubaum opined that although Plaintiff had major problem in the past, she has not had a period of twelve months of consecutive disability. *Id.*

Plaintiff visited Dr. Csepanyi on October 9, 2012, complaining of chest pain and a shortness of breath. Tr. at 413. Dr. Csepanyi's records do not include any notation of the treatment prescribed regarding Plaintiff's symptoms. *Id.* Plaintiff sought treatment from Dr. Csepanyi again on November 5, 2012, complaining of chest pain, headaches, and nausea. *Id.* at 421. These notes do not indicate what treatment was prescribed by Dr. Csepanyi. *Id.* On December 6, 2012, Plaintiff returned to Dr. Csepanyi's office, and indicated that she was suffering from abdominal pain, atrial fibrillation, and anxiety disorder due to her medical condition. *Id.* at 423.

Dr. Csepanyi completed a Medical Source Statement of Ability to do Work Related Activities on January 7, 2013. Tr. at 434-36. Dr. Csepanyi's diagnoses included attrial fibrillation, congestive heart failure, asthma, osteoarthritis, sleep apnea, knee pain, and neck pain. *Id.* at 434. As stated by Dr. Csepanyi, these impairments lasted or could be expected to last at least twelve months. *Id.* When identifying Plaintiff's symptoms, Dr. Csepanyi stated that Plaintiff was suffering from pain, headaches, body aches, dizziness, palpitations, shortness of breath, chest pain, knee pain,

-5-

and insomnia. *Id.* Dr. Csepanyi opined that Plaintiff's prognosis was poor, stating that Plaintiff could walk only half a city block without rest or severe pain, that Plaintiff could only sit for thirty minutes at one time before needing to rise, and that Plaintiff could only stand for fifteen minutes at one time before needing to sit down or walk around. *Id.* Continuing, Dr. Csepanyi opined that Plaintiff could only sit, stand, or walk for two hours in an eight-hour workday, that Plaintiff needed a job that permitted shifting between sitting, standing, and walking, and that Plaintiff would need to take unscheduled breaks from work every fifteen minutes. *Id.* at 434-35. Dr. Csepanyi stated that the unscheduled breaks would need to be at least ten minutes long, and that Plaintiff would need to lie down during the break, noting that Plaintiff would be required to use a cane during the periods in which she was standing or walking. *Id.* at 435. Regarding Plaintiff's ability to lift and carry objects, Dr. Csepanyi opined that Plaintiff could rarely lift and carry objects weighing less than ten pounds, and could never carry objects weighing over ten pounds. *Id.* Dr. Csepanyi indicated that Plaintiff could rarely twist, climb stairs, and balance, and that Plaintiff could never stoop, crouch, squat, climb ladders, or kneel. *Id.* According to Dr. Csepanyi, Plaintiff would have significant limitations in reaching, handling, and fingering. *Id.* at 436. Dr. Csepanyi further opined that Plaintiff would be off-task twenty-five percent or more on a typical workday, and that she would be absent from work more than three days (presumably in a month). *Id.* Finally, Dr. Csepanyi indicated that Plaintiff's asthma limited her to working in an environment free of fumes, bad odors, or anything that would make Plaintiff dizzy. *Id.*

Plaintiff again visited Dr. Csepanyi on June 19, 2013. Tr. at 438. Dr. Csepanyi noted that Plaintiff was complaining of ear pressure, and prescribed medication. *Id.* at 438-39. Additionally, Dr. Csepanyi assessed that Plaintiff suffered from atrial fibrillation. *Id.* at 439.

### III.  SUMMARY OF THE TESTIMONIAL EVIDENCE

At the August 8, 2013 hearing, Plaintiff's counsel provided an opening statement indicating that Plaintiff was diagnosed with atrial fibrillation and underwent two ablations, but "continued to have some difficulty after with respect to fatigue and shortness of breath." Tr. at 43. Plaintiff's counsel further stated that Plaintiff had been diagnosed with osteoarthritis, but recognized that the diagnosis came after the date Plaintiff was last insured. *Id.* Plaintiff was examined by the ALJ, and

testified that her previous job at Boormax required more sitting than standing, and that she had not been required to lift anything heavier than a box of filing paper, although Plaintiff did not know the actual weight of the box. *Id*. at 48. Plaintiff then stated that she estimated that she spent half the day standing or walking when working at her previous job at Guarantee Management as an apartment manager. *Id.* at 50. As indicated by Plaintiff, the job that she held prior to her position at Guarantee Management, also as an apartment manager, consisted of the same physical requirements. *Id.* Plaintiff then stopped working to care for a friend that was diagnosed with cancer, and during this time period she began to suffer from atrial fibrillation. *Id.* at 51. Continuing, Plaintiff testified that she had not had a restful night of sleep in some time, and that she had to nap during the day. *Id.* at 55-56. Plaintiff indicated that she probably had three bad days a week during which she felt achiness, fatigue, and depression. *Id.* at 56-57. While describing her ailments, Plaintiff stated that she was unable to multitask. *Id.* at 58. Plaintiff indicated that she spends her days doing laundry, vacuuming a single room at a time, and laying down to rest. *Id.* at 62. When questioned by the ALJ, Plaintiff indicated that she could drive, but not very far, and that she enjoyed scrapbooking, although she was unable to write for very long before her hands bothered her. *Id.* at 62-63.

The ALJ then proceeded to question the vocational expert ("VE"). Tr. at 65. The ALJ asked the VE whether Plaintiff could return to her past work if she could sit less than two hours and stand and/or walk less than two hours in an eight-hour workday. *Id.* at 67. The VE opined that Plaintiff would not be able to return to her past work given the above limitations. *Id.* Further, when asked by the ALJ, the VE stated that a hypothetical individual with Plaintiff's vocational profile and the RFC described above would not be able to perform any other work. *Id.* The ALJ then posed a hypothetical individual capable of lifting twenty pounds occasionally and ten pounds frequently, and capable of standing, walking, and/or sitting for six hours in an eight-hour workday. *Id.* The VE opined that jobs existed that this hypothetical individual could perform. *Id.* at 68. The ALJ then posed a separate hypothetical individual who would be off-task for fifteen percent of the workday. *Id.* at 68. The ALJ indicated that there would be no work that could be performed by this hypothetical individual. *Id.* at 69. Finally, the VE testified that there was no work that could be

-7-

performed by a hypothetical individual with Plaintiff's vocational profile and RFC. *Id.* The ALJ then concluded the hearing. *Id.* at 70.

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. §§ 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d)(1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at step five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and RFC. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings

and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.; Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## VI. ANALYSIS

Plaintiff asserts that the ALJ erred in his decision for the following reasons: the ALJ wrongfully determined that Plaintiff's atrial fibrillation, a medically-determinable impairment, did not persist for twelve months; the ALJ violated the treating physician rule; and the ALJ engaged in an improper analysis of Plaintiff's credibility. ECF Dkt. #13 at 2. Each of the reasons provided by Plaintiff will be addressed in turn.

### A. Substantial Evidence

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to consider Plaintiff's atrial fibrillation, her primary physical impairment. Tr. at 5. According to Plaintiff, the ALJ incorrectly determined that her atrial fibrillation was not a medically determinable impairment because of an unsubstantiated assumption that the impairment did not persist or was not expected to persist for at least twelve months, and that this determination was prejudicial to Plaintiff. *Id.* at 5-6.

The ALJ determined that Plaintiff's atrial fibrillation lasted for less than twelve months, beginning on September 19, 2011 and resolving on April 23, 2012, the date Plaintiff underwent her second ablation procedure. Tr. at 29-30. This determination was made at Step Two of the sequential evaluation. *Id.* at 29-30. The ALJ determined that, when considering all of Plaintiff's medically determinable impairments in combination, Plaintiff's impairments constituted a severe impairment. *Id.* at 29. Continuing, the ALJ indicated that Plaintiff underwent an ablation procedure

on October 28, 2011, but that Plaintiff's atrial fibrillation recurred on November 4, 2011. *Id.* at 30. Plaintiff underwent a second atrial fibrillation on April 23, 2012. *Id.* The ALJ points to notes from Plaintiff's May 8, 2012 visit, during which Dr. Harada stated that Plaintiff had "a recurrent, self-limited episode of atrial fibrillation in the form of palpitations yesterday." *Id.* (citing Tr. at 30). The ALJ also noted that Dr. Montañez termed the second ablation "successful." Tr. at 30 (citing *Id.* at 405). Based on the above described assessment, the ALJ did not term Plaintiff's atrial fibrillation as medically determinable because it did not persist for twelve months. Tr. at 30. Accordingly, the ALJ did not consider Plaintiff's atrial fibrillation as a medically-determinable impairment at any other step in the sequential evaluation. *Id.* at 30-34.

Plaintiff contends that the ALJ's assumption that Dr. Montañez's statement that the second ablation was "successful" undoubtedly meant that Plaintiff's atrial fibrillation was no longer a severe impairment was incorrect, and that the medical evidence on the record showed that Plaintiff's atrial fibrillation did constitute a severe impairment that persisted longer than twelve months. ECF Dkt. #13 at 5-6. Plaintiff maintains that Dr. Montañez's remark that Plaintiff's second ablation was "successful" meant nothing more than that the surgery was performed without complications, rather than implying that Plaintiff's condition was extinguished. *Id.* at 7. In support of her position, Plaintiff cites four medical opinions that were provided over a year after the alleged onset date that Plaintiff believes demonstrate that she suffered from atrial fibrillation for over twelve months. *Id.* Plaintiff also cites the Medical Source Statement prepared by Dr. Csepanyi as evidence that Plaintiff continued to suffer from atrial fibrillation for over twelve months. *Id.* at 8 (citing Tr. at 434-36). Additionally, Plaintiff, citing to information obtained online from the Mayo Clinic, states that atrial fibrillation is the type of condition that is not necessarily going to cause suffering all day, every day, and that the nature of the impairment explains it is not diagnosed during every doctor's appointment.[3] ECF Dkt. #13 at 8.

---

[3]Information obtained from the Mayo Clinic's website indicates that "[e]pisodes of atrial fibrillation can come and go, or you may develop atrial fibrillation that doesn't go away and may require treatment. Although atrial fibrillation itself usually isn't life-threatening, it is a serious medical condition that sometimes requires emergency treatment." Mayo Clinic, Atrial Fibrillation: Overview, http://www.mayoclinic.org/diseases-conditions/atrial-fibrillation/home/ovc-20164923?p=1 (last visited Feb.

-10-

Plaintiff also argues that the ALJ's failure to recognize her atrial fibrillation as a medically-determinable impairment amounted to more than harmless error. ECF Dkt. #13 at 8. Plaintiff indicates that this is not a case where the ALJ found Plaintiff's atrial fibrillation to be non-severe, but considered atrial fibrillation in conjunction with other severe impairments. Rather, the ALJ determined that Plaintiff's atrial fibrillation was not a medically-determinable impairment, and thus did not consider atrial fibrillation at the later steps in the sequential evaluation. *Id.* at 8-9.

Defendant argues that the ALJ reasonably concluded that Plaintiff experienced recurrent atrial fibrillation for less than twelve months and cited to evidence to support those findings. ECF Dkt. #17 at 7. To support this position, Defendant indicates that the ALJ noted that Plaintiff underwent two ablation procedures and that Dr. Montañez indicated the second ablation procedure was successful. Defendant asserts that Dr. Montañez's statement that the second ablation procedure was "successful" constitutes objective medical evidence. *Id.* at 8. Coupled with Dr. Rubaum's conclusion that, although Plaintiff "has had a major problem with atrial fibrillation and atrial flutter[,]... [s]he is doing very well from a cardio-respiratory standpoint," Defendant asserts that the medical evidence in the record supported a finding that Plaintiff's atrial fibrillation did not persist for twelve months. *Id.* (citing Tr. at 30, 76).

Defendant's arguments are not persuasive. As an initial matter, when making the Step II determination that Plaintiff's atrial fibrillation did not constitute a medically-determinable impairment because it did not persist for twelve months, the ALJ made no mention of Dr. Rubaum's opinion that Plaintiff was doing fine from a respiratory standpoint, only citing the May 8, 2012 and May 18, 2012 opinions from Dr. Harada and Dr. Montañez, respectfully. *See* Tr. at 30. Further, Defendant cites to nothing in the ALJ's decision where the ALJ indicated that he considered Dr. Rubaum's opinion when making the decision that Plaintiff's atrial fibrillation did not persist for twelve months. ECF Dkt. #17 at 8 (citing Tr. at 30, 76).

The Court must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *Walters*, 127 F.3d at 528. The

2, 2016).

Court "may not base its decision on a single piece of evidence and disregard other pertinent evidence when evaluating whether substantial evidence in the record exists." *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). However, a substantiality of evidence evaluation does not permit a selective reading of the record:

> Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.

*Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984).

The ALJ considered the May 2012 opinions of Dr. Harada and Dr. Montañez when determining whether Plaintiff's atrial fibrillation lasted for twelve months or longer. In fact, these are the only two opinions that the ALJ cited when finding that Plaintiff's atrial fibrillation did not persist for twelve months. Tr. at 30. Defendants do not argue that the ALJ improperly relied on medical opinions provided after Plaintiff's date last insured, and, in any event, if Defendant were to make that argument, Defendant would also be arguing that the only two medical source opinions the ALJ cited when making his determination should also be precluded. Defendant would effectively be arguing that the ALJ made his decision regarding Plaintiff's atrial fibrillation without citing the opinion of any medical professional.

Plaintiff has cited to four medical opinions on the record, dated after September 19, 2012, twelve months from the alleged onset date, that she believes serve as evidence that her atrial fibrillation persisted for a period longer than twelve months. ECF Dkt. #13 at 7. Two of these opinions are from Dr. Csepanyi, Plaintiff's treating physician. In an opinion dated December 6, 2012, Dr. Csepanyi lists Plaintiff's diagnoses as abdominal pain, atrial fibrillation, and anxiety disorder due to her general medical condition. Tr. at 423. Dr. Harada assigned Plaintiff diagnosis codes for atrial fibrillation, chest pain, and essential hypertension on February 26, 2013. *Id.* at 448. On May 29, 2013, Dr. Harada assigned Plaintiff diagnosis codes for essential hypertension and atrial

-12-

fibrillation. *Id.* at 441. On June 19, 2013, Dr. Csepyani assessed Plaintiff as suffering from atrial fibrillation and eustachin tube dysfunction. *Id.* at 439. None of these four opinions are addressed by the ALJ when finding that Plaintiff's atrial fibrillation did not persist for twelve months.

The ALJ engaged in a selective reading of the record. The ALJ takes notice of two opinions he claims support the finding that Plaintiff's atrial fibrillation did not persist for twelve months. Tr. at 30. One of these opinions merely states that Plaintiff underwent successful ablation procedure. *Id.* The undersigned agrees with Plaintiff that an indication that a surgery was successful does not necessarily mean that Plaintiff was forever cured, but rather may mean that the procedure was performed as intended. The ALJ did cite medical evidence that Plaintiff's May 8, 2012 visit with Dr. Harada resulted in an opinion that Plaintiff had a recurrent, self-limited episode of atrial fibrillation on May 7, 2012, however, the ALJ fails to address the opinions continuing through 2012 and into 2013 indicating that Plaintiff's atrial fibrillation persisted for a period of time longer than twelve months. As stated above, a substantiality of the evidence evaluation does not permit a selective reading of the record. *Garner*, 745 F.2d at 388. "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.* There is no indication that the ALJ considered the four opinions discussed above, which speak directly to the length of time during which Plaintiff's atrial fibrillation persisted and suggest that time period might be greater than twelve months. "Substantiality of the evidence must be based upon the record taken as a whole." *Id.* The ALJ's decision does not demonstrate that the record was taken as a whole, but rather that the record was read selectively. Accordingly, the undersigned finds that the ALJ's decision is not based on substantial evidence, and recommends that the instant case be remanded.

### B. Plaintiff's Remaining Claims of Error

Plaintiff also asserts that the ALJ failed to comply with the treating physician rule and engaged in an improper analysis of Plaintiff's credibility. In light of the undersigned's recommendation that the Court remand the instant case because the ALJ's decision is not based on substantial evidence, the undersigned further recommends that the Court decline to address these remaining allegations as the ALJ's re-evaluation and analysis on remand may impact his findings

on these issues in the remaining steps of the sequential evaluation. *See Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 417 (6th Cir. 2011).

## VII.   RECOMMENDATION AND CONCLUSION

For the following reasons, the undersigned RECOMMENDS that the Court REVERSE the ALJ's decision and REMAND Plaintiff's case to the ALJ for analysis of Plaintiff's atrial fibrillation and to proceed through the sequential evaluation based on that analysis.


DATE: February 2, 2016                     */s/George J. Limbert*
                                           GEORGE J. LIMBERT
                                           UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).